NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTHERN HIGHLANDS REGIONAL HIGH SCHOOL BOARD OF EDUCATION, <br><br> Plaintiff, <br><br> v. <br><br> C.E. and A.E., o/b/o C.E., <br><br> Defendants. | Civil Action No.: 18-8999 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Northern Highlands Regional High School Board of Education ("the Board")'s motion to stay the decisions of the administrative law judge awarding reimbursement to Defendants C.E. and A.E., on behalf of C.E. (ECF No. 3). Defendants have opposed, (ECF Nos. 14–15), and the Board has submitted a reply, (ECF No. 20). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies the Board's motion to stay.

## I. BACKGROUND

The Board oversees a regional public high school in northern New Jersey. Defendants are the parents of C.E., a student at Adelphi University who, while in high school, was a student eligible for special education under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("the IDEA"). (ECF No. 1 at 17; ECF No. 15 ("Opp. Br.") at 10–17). The Board

was the local educational authority responsible for providing C.E. with a free and appropriate public education ("FAPE"). (ECF No. 1 at 17). C.E. entered ninth grade in 2011, and because the Board did not offer a program appropriate for C.E., C.E. spent four years in a specialized program in a different school. (ECF No. 1-1 at 20).

During C.E.'s senior year of high school, the Board discussed with Defendants the possibility of placing C.E. in a transition program that would prepare him for further education, employment, and independent living. (ECF No. 1-1 at 20–21). The Board and C.E.'s parents ultimately agreed to a cost-sharing arrangement whereby C.E. would attend a residential transition program at the Riverview School in Massachusetts ("Riverview") for the 2015–2016 school year. (ECF No. 1 at 1–12 ("Compl.") ¶ 5). The parties' arrangement was memorialized in a settlement agreement (the "Settlement Agreement") that was approved in an order by ALJ Robert Giordano on July 31, 2015. (ECF No. 1 at 15–21). The Settlement Agreement provided that the Board would pay $45,998.00 toward C.E.'s program at Riverview, and C.E.'s parents would be responsible for all other costs of that placement. (ECF No. 1 at 17).

The Settlement Agreement established a mechanism for C.E. to "stay put" in a transition program should it be determined that C.E. required additional educational services beyond the 2015–2016 school year. Paragraph 6 of the Settlement Agreement provides that:

> An [Individualized Education Program ("IEP")] meeting will be held in the spring 2016. Unless the parties mutually agree at the IEP meeting that C.E. requires educational services past June 30, 2016, [the Board's] legal responsibility to educate C.E. will terminate on June 30, 2016 at which time C.E. will be awarded his high school diploma from Northern Highlands Regional High School Board of Education. Should the Parents and/or the student make any claims upon [the Board] for educational services after that date, C.E.'s "stay put" placement will, as of July 1, 2016 and until and unless there is a Court Order or mutually agreed-upon settlement establishing any other placement for C.E., be an in-district program at Northern Highlands.

2

(ECF No. 1 at 17). Toward the end of the 2015–2016 school year, C.E.'s parents determined that C.E. had not progressed sufficiently at Riverview to meet the goals outlined in the IEP, and that C.E. likely required additional educational services in a transitional placement. (ECF No. 1-1 at 20–21). In a series of discussions in May of 2016, including at an IEP meeting on May 26, 2016, the Board expressed the view that its obligations to C.E. under the Settlement Agreement would terminate on June 30, 2016, and it became clear that the Board had not yet established an in-district stay-put program that C.E. could attend. (ECF No. 1-1 at 23–24).

## II. PROCEDURAL HISTORY

On June 2, 2016, Defendants filed a due process petition arguing generally that 1) the Board breached the Settlement Agreement because the May 26, 2016 IEP meeting was not conducted in accordance with law, and 2) the Board had denied C.E. a FAPE under the IDEA by denying him special education services for the the 2016–2017 school year. (Compl. ¶ 9; *see also* ECF No. 1 at 22–43). As a result, Defendants requested that the Board pay for C.E.'s continued placement at Riverview or an alternative transitional placement. (ECF No. 1 at 40–41). According to Defendants, their due process petition "triggered [the Board's] obligation under the [S]ettlement [A]greement to provide an in-district program as of July 1, 2016." (ECF No. 14 ¶ 14). Defendants also sent the Board a "10-day letter" on June 6, 2016, notifying the Board that Defendants rejected the IEP resolution, and that Defendants were forced to take whatever actions they deemed necessary, including "unilateral placement [of C.E.] at Riverview" for the following year, and that they may initiate litigation regarding the cost of that placement. (ECF No. 14 ¶ 12).

Because they felt that the Board had no plan to provide an in-district stay-put program for C.E., Defendants also filed a motion for emergent relief with the Office of Administrative Law on

3

June 8, 2016. (ECF No. 1 at 44–57). Defendants' motion for emergent relief requested that the Board not graduate C.E. and requested a ruling that Riverview would remain C.E.'s stay-put placement, at the Board's expense, until the due process issues were resolved. (Compl. ¶ 10). The Board then agreed not to issue C.E. a diploma, Defendants withdrew their motion, and administrative law judge Ellen S. Bass ordered that the dispute would proceed to a plenary hearing. (ECF No. 1-1 at 13–16). In the meantime, C.E. attended Riverview for the 2016–2017 school year—the full cost of which was $80,500.00—at Defendants' expense. (ECF No. 1-1 at 53).

The matter was assigned to administrative law judge Richard McGill ("ALJ McGill"), who split the case into three hearings to address the following questions individually: 1) whether the manner in which the May 26, 2016 IEP meeting was conducted constituted a breach of the Settlement Agreement; 2) whether the Board breached the Settlement Agreement by failing to establish an in-district stay-put program for C.E.; and 3) whether the Board denied C.E. a FAPE under the IDEA by refusing to pay for C.E.'s continued placement at Riverview. (Compl. ¶¶ 13–14). With respect to the first issue, ALJ McGill concluded on December 29, 2017 that the manner in which the IEP meeting was conducted did not constitute a breach of the Settlement Agreement. (ECF No. 1-1 at 30).

However, ALJ McGill decided in Defendants' favor on the second and third issues. Defendants argued that Paragraph 6 of the Settlement Agreement required the Board to establish an in-district stay-put placement for C.E., and the Board failed to do so. (ECF No. 1-1 at 38). As a result, Defendants requested an order directing the Board to be responsible for all costs associated with C.E.'s continued out-of-district placement at Riverview. (ECF No. 1-1 at 34–35). The Board countered that it was under no obligation to provide an in-district program because the relevant final sentence of Paragraph 6 "was inserted not because either party anticipated that [Defendants]

would even consider returning C.E. to an in-district placement, much less do so, but so that [the Board] would not have to continue to pay for C.E.'s placement at Riverview in the event of a legal challenge." (ECF No. 1-1 at 38). Defendants maintained that the Board's "false assumption that C.E. would not attend an in-district program did not relieve [the Board] of its obligation to provide" such a program. (ECF No. 1-1 at 38).

ALJ McGill rejected the Board's argument, reasoning that that the Board's interpretation of Paragraph 6 was "not apparent from the language or the context" of the Settlement Agreement and was inconsistent with "the subsequent actions of the parties." (ECF No. 1-1 at 39). ALJ McGill further determined that, as a factual matter, the Board "did not provide the in-district program required by Paragraph 6." (ECF No. 1-1 at 40). As a result, ALJ McGill concluded on April 2, 2018, that the Board "breached the Settlement Agreement . . . by failing to have an in-district stay-put program in place for C.E." (ECF No. 1-1 at 41). The Board's motion for reconsideration was denied on April 4, 2018. (ECF No. 1-1 at 45–48).

On April 26, 2018, ALJ McGill found with respect to the third issue that the Board "failed to provide a FAPE for C.E. during the 2016–2017 school year" and ordered the Board to reimburse Defendants $80,500.00 for C.E.'s placement at Riverview for that year. (ECF No. 1-1 at 55–59). ALJ McGill reasoned that the Board had not offered any IEP for C.E. beyond June 30, 2016, and "[w]ithout an IEP, a student cannot receive a FAPE." (ECF No. 1-1 at 55). When the state fails to provide a FAPE, a student's "parents have the right to reimbursement for a unilateral placement in a private school." (ECF No. 1-1 at 56). ALJ McGill rejected the Board's argument that C.E. did not need educational services after June 30, 2016, because Defendants had filed their due process petition on June 3, 2016, and "once the parents have filed for due process, stay put takes effect irrespective of the merits of their case." (ECF No. 1-1 at 58). Since the Board never

5

established the in-district stay-put program contemplated by the Settlement Agreement, "the parties had a placement without a program," and "the last operative placement . . . would be Riverview based on [an] IEP dated October 6, 2015." (ECF No. 1-1 at 56). Therefore, ALJ McGill concluded that Defendants had placed C.E. at Riverview in accordance with the requirements of the IDEA for purposes of reimbursement. (ECF No. 1-1 at 56–57).

The Board filed an action in this Court seeking an order reversing ALJ McGill's April 4 and April 26, 2018 decisions. (Compl. at 10). The Board now moves to stay those decisions pending the resolution of this action, arguing generally that it is likely to succeed on the merits of its appeal and that it will suffer irreparable harm if ALJ McGill's orders are not stayed. (*See generally* ECF No. 3). For the foregoing reasons, the Board's motion is denied.

## III. LEGAL STANDARD

In determining whether to stay an administrative decision pending the resolution of an appeal, courts apply the legal standard for a preliminary injunction. *Borough of Palmyra, Bd. of Educ. v. F.C. ex rel. R.C.*, 2 F. Supp. 2d 637, 641 (D.N.J. 1998). This Court must therefore balance the following four factors: (1) the Board's likelihood of success on the merits of its appeal, (2) the likelihood that the Board will suffer irreparable harm in the absence of a stay, (3) whether a stay would substantially injure other parties with an interest in the litigation, and (4) the public interest in granting a stay. *Id.* A stay is an "extraordinary remedy and should be granted only in limited circumstances." *Edison Twp. Bd. of Educ. v. F.S.*, No. 17-53, 2017 WL 6627415, at *2 (D.N.J. Oct. 27, 2017) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)); *see also Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health and Human Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013) ("Such stays are rarely granted, because

in our Court the bar is set particularly high.").

## IV. ANALYSIS

### A. Likelihood of Success on the Merits

"[J]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 757 (3d Cir. 1995) (quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993)). When a federal district court reviews an administrative adjudication in an IDEA case, the court: (i) shall receive the records of the below proceeding; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on a preponderance of evidence, shall grant such relief as the court deems appropriate. 20 U.S.C. § 1415(i)(2)(C); *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1218 (3d Cir. 1993). A district court gives "due weight" or a "modified *de novo*" review to an ALJ's factual findings, *see S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003), and applies a *de novo* standard of review for questions of law, *see P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003).

#### 1. Breach of the Settlement Agreement

The Board argues that ALJ McGill erred in finding that the Board's failure to have an in-district program available for C.E. constituted a breach of the Settlement Agreement. (ECF No. 3-1 ("Mov. Br.") at 9–13). According to the Board, Defendants never intended for C.E. to attend an in-district transition placement at Northern Highlands, and that the final sentence of Paragraph 6 was included at the request of the Board to absolve it from any further payments for C.E.'s

placement at Riverview. (Mov. Br. at 9–11). ALJ McGill found this assertion contrary to the language of the Settlement Agreement and the actions of Defendants. (ECF No. 1-1 at 39). The Court is not convinced at this time that that determination was erroneous.

The final sentence of Paragraph 6 of the Settlement Agreement establishes a stay-put placement for C.E. in the event that the parties disagreed about the appropriate educational course for him following June 2016. Pursuant to that provision, the Board had an obligation to establish its own in-district placement in the event that Defendants filed for a due process hearing claiming a need for educational services after June 30, 2016—which they did, on June 2, 2016. (ECF No. 1 at 22). It is undisputed that the Board did not establish such a placement. The Court agrees with the Board that there is some tension between the two operative sentences of Paragraph 6. Nevertheless, the Board has not met its burden at this stage of demonstrating to the Court that Defendants' intent was to release the Board from all financial responsibility for C.E.'s transition placement following June 30, 2016, when, as ALJ McGill concluded, such an intent is directly contrary to the subsequent actions of Defendants—who did make a claim upon the Board for educational services after June 2016 and sought information concerning the in-district program contemplated by Paragraph 6.

### 2. Denial of a FAPE

"The IDEA is intended to ensure that every child with special needs is afforded a 'free appropriate public education designed to meet [those] unique needs' through the statute's 'comprehensive . . . remedial scheme.'" *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (first quoting 20 U.S.C. § 1400(d)(1)(A); then quoting *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 803 (3d Cir. 2007) (en banc)). "A school district provides a FAPE by designing

and implementing an individualized instructional program set forth in an [IEP], which 'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 729–30 (3d Cir. 2009) (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir.2004)). If a parent believes a school district has failed to provide a FAPE, the parent "may file a due process complaint on behalf of his or her child, with a subsequent hearing held before an administrative hearing officer." *Ligonier*, 804 F.3d at 608 (citing 20 U.S.C. §§ 1415(b)(6), (f)(1)(A)). Those administrative determinations may be appealed to federal court. 20 U.S.C. § 1415(i)(2).

ALJ McGill reasoned that the May 26, 2016 IEP meeting did not result in an IEP for the 2016–2017 school year, without which C.E. could not have received a FAPE for that year. (ECF No. 1-1 at 55). ALJ McGill then found that C.E.'s placement at Riverview could be interpreted in one of two ways, either of which entitled Defendants to reimbursement. First, C.E.'s placement at Riverview could be understood as a unilateral placement on the part of C.E.'s parents. (ECF No. 1-1 at 56). In the absence of a FAPE, the parents have a right to reimbursement, so long as it is an appropriate placement and the parents provide notice to the school district of their intent to pursue such placement, which Defendants did. (ECF No. 1-1 at 56). Alternatively, because the in-district stay-put placement contemplated by the Settlement Agreement did not exist at the time C.E.'s parents attempted to invoke it, Riverview could be understood as C.E.'s last operative placement as of the date the dispute between the parties began in June 2016. (ECF No. 1-1 at 57–58). If this were the case, the school district would have an obligation to pay throughout the administrative and appellate processes. (ECF No. 1-1 at 57–58 (citing *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 124 (3d Cir. 2014)). The Board contends that ALJ McGill's determination that the

Board denied C.E. a FAPE by failing to offer the in-district stay-put placement is erroneous because C.E., as a 20-year-old young man, was not entitled to an additional year of educational services. (Mov. Br. at 14). But ALJ McGill correctly found that a school district must ensure a stay-put placement once the parents have filed a due process petition irrespective of the underlying appropriateness of the placement, (ECF No. 1-1 at 55). *See Ridley*, 744 F.3d at 125 ("[T]he stay-put provision [of the IDEA] is designed to ensure educational stability for children with disabilities until the dispute over their placement is resolved, '*regardless of whether their case is meritorious or not.*'") (emphasis in original) (quoting *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996)).

As a result, the Court concludes that the record at this time provides considerable support for ALJ McGill's determination that the Board failed to provide C.E. with a FAPE. Because the Court finds below that the other three factors weigh against granting the stay, a stronger finding in the Board's favor on this factor would not have a significant impact on the Court's balancing. *See Conestoga Wood Specialties*, 2013 WL 1277419, at *1 (noting that, in the Third Circuit, a stay pending an appeal is granted "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor" a stay) (quoting *N.J. Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir. 1995)).

**B. Irreparable Harm**

It is well-settled that "an injury measured in solely monetary terms cannot constitute irreparable harm." *Liberty Lincoln-Mercury, Inc. v. Ford*, 562 F.3d 553, 557 (3d Cir. 2008). This is so because "[i]rreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Kos Pharm.*, 369 F.3d at 727 (quoting *Pappan Enters., Inc. v. Hardee's*

*Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)). Nevertheless, the Board argues that there is a carveout from this general rule for cases where an ALJ has ordered a school district to reimburse parents for special education expenses under the IDEA. According to the Board, such economic harm is irreparable because the IDEA does not offer a mechanism under which the Board could recover that cost from Defendants should the ALJ's decision be reversed. (Mov. Br. at 16–18).

In *Susquenita Sch. Dist. v. Raelee S. ex rel. Heidi S.*, the Third Circuit considered whether the parents of a student eligible for special education services under the IDEA are entitled to have their child's "private school placement funded by the local public school district prior to the conclusion of litigation establishing the propriety of that placement." 96 F.3d 78, 79 (3d Cir. 1996). The school board in that case had requested a stay pending the ultimate resolution of the administrative appeals panel's decision ordering the school board to pay for the student's private school tuition. *Id.* at 80. In considering the irreparable harm factor, the district court determined that, under IDEA case law, the school board "would not be entitled to recover funds expended to maintain [the student] in private school even if it were to prevail on appeal." *Id.* at 81. The district court therefore "found merit in [the school board's] argument that it would suffer irreparable harm if the stay were denied," but it ultimately "did not find this prospect of harm sufficient to justify granting the stay." *Id.*

The Third Circuit agreed. In affirming the district court's denial of the stay, the Third Circuit reasoned that "the policies underlying the IDEA and its administrative process favor imposing financial responsibility upon the local school district as soon as there has been an administrative panel or judicial decision establishing" a student's placement. *Id.* at 85. As to the irreparability of harm, the Third Circuit declined to "address the issue of the school district's ability to recover tuition payments . . . should the school district ultimately prevail" as it deemed the issue

11

"premature." *Id.* at 87 n.10. The Third Circuit concluded that a stay was inappropriate without reaching the irreparability question because, even if it were to reach "a different conclusion with respect to the absolute nature of [the school district's] financial obligations and fail to find a likelihood of irreparable harm, the argument in favor of denying the stay would be even stronger." *Id.*; *see also Ridley*, 744 F.3d at 119 (finding that a school district's financial responsibility for a student's stay-put placement under the IDEA commenced with the administrative decision in the parents' favor and endured "while the court proceedings were pending").

In light of the reasoning in *Susquenita*, the Board's reliance on this Court's decision in *Millburn Twp. Bd. of Educ. v. M.P.*, No. 15-5284, 2016 WL 311260 (D.N.J. Jan. 26, 2016) is unavailing. In that case, the Court determined that the irreparable harm factor weighed in favor of the school board's request for a stay because of the absence of a "specific mechanism under the IDEA through which the District could seek a return of the money if this Court ultimately rules in its favor." *Millburn*, 2016 WL 311260, at *7. Nevertheless, weighing all the factors, the Court declined to stay the ALJ's decision. *Id.* at *8. Whatever permanence the Court assigned to the harm associated with denying the stay, the Court did not find that injury sufficient to justify granting the stay. The decision in *Millburn* is therefore in line with the Third Circuit's decision affirming the denial of a stay in *Susquenita*, which this Court follows. *See Susquenita*, 96 F.3d at 87 n.10 ("In spite of its resolution of this harm factor in favor of the school district, the district court concluded that a weighing of all relevant factors favored denying the stay.").

It is worth noting that other courts in this Circuit have denied requests by school districts for stays of IDEA awards on the basis that the harm posed by the school districts' interim financial responsibility for a student's tuition pending appeal was not irreparable at all. *See, e.g., Borough of Palmyra*, 2 F. Supp. 2d at 644 (concluding that "the Board's only asserted loss is financial" and

"[e]conomic loss does not constitute irreparable harm"); *Edison Twp.*, 2017 WL 6627415, at *6–7 ("It is understandable why [the school board] would want to retain the money and avoid attempting to collect later. But that is not *irreparable* harm.") (emphasis in original).

Ultimately, even if the Board *were* unable as a matter of law to recover the $80,500.00 from Defendants should ALJ McGill's decision be reversed on appeal, this Court would be inclined to follow *Susquenita* and *Millburn* in denying the stay in spite of such a finding. Because the Court concludes that even a finding of irreparable harm would not justify a stay, the Court need not determine at this time whether the Board would, in fact, be able to recover the $80,500.00 if ALJ McGill's decision were reversed on appeal. *See Susquenita*, 96 F.3d at 87 n.10; *Edison Twp.*, 2017 WL 6627415, at *7 (reasoning that "even if speculation about the difficulty of recovering funds could be said to constitute irreparable harm, the injunction should still be denied" based on the other factors). Therefore, the Court concludes that this factor does not weigh in favor of a stay.

## C. Substantial Injury to Other Interested Parties

Defendants argue that they "have already expended a substantial sum from C.E.'s college education account to pay for the stay-put placement . . . and a stay would exacerbate that harm." (Opp. Br. at 14). The Board argues that because C.E. has already completed the 2016–2017 school year, granting the stay "will have no adverse impact on Defendants." (Mov. Br. at 19). The Court finds that Defendants, clearly interested parties, will be substantially injured if they are unable to recover the amount awarded by ALJ McGill until the final resolution of the merits of this case. *See Edison Twp.*, 2017 WL 6627415, at *7 (denying stay and concluding that the Court had "no reason to question the parents' representation that paying tuition has caused a financial strain"); *Millburn*, 2016 WL 311260, at *8 (denying stay and noting that the Court had "no reason to doubt

13

[the parents'] position that they are burdened with the costs of providing tuition"). Therefore, this factor weighs against granting a stay.

**D. Public Interest**

The Board contends that the deprivation of public dollars during the pendency of the appeal would harm the school district and, in turn, its students. (Mov. Br. at 19). In enforcing ALJ McGill's order pending the outcome of this litigation, the Court is mindful of the needs of the Board's other students. However, the Board has not presented evidence of the size of its overall budget or costs, or otherwise demonstrated that its students will suffer without the immediate availability of a sum of $80,500.00.[1] *See Borough of Palmyra*, 2 F. Supp. 2d at 645 (concluding that the school board's payment of the student's tuition would not have "dire financial consequences," comparing the modest payment amount to the school's overall budget). In passing the IDEA, Congress made a determination that the interim financial burden of educating students with special needs is better borne by school districts rather than by parents. *See Susquenita*, 96 F.3d at 87 (noting that "public educational authorities who want to avoid reimbursing parents for the private education of a disabled child" have the alternative option of "giv[ing] the child a free and appropriate public education in a public setting," i.e., providing it themselves) (quoting *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993)).

Defendants argue that the public interest supports the enforcement of the parties' Settlement Agreement pending the appeal, in which the Board "undertook to provide a stay-put placement [for C.E.] as part of its obligation under the IDEA." (Opp. Br. at 16). The Court agrees.

---

[1] According to the Board's website, the Board's total budget for the 2017–2018 school year was almost $30 million. *See* Northern Highlands Regional High School, 2017–2018 School Budget, *available at* https://www.northernhighlands.org/cms/lib/NJ01000179/Centricity/Domain/257/ufbud18-FINAL-3-16-17.pdf (last visited Oct. 18, 2018).

14

As the Third Circuit explained in *Susquenita*,

> Nothing in the [IDEA] or in its legislative history convinces us that Congress intended to shield school districts from financial responsibility prior to the close of litigation. . . . The purpose of the [IDEA], which is to ensure that every child receive a 'free and appropriate education' is not advanced by requiring parents, who have succeeded in obtaining a ruling . . . to front the funds for continued private education.
>
> The burden that such an approach would place on many families is overwhelming. . . . Families without means would be hard pressed to pay for private education in what will almost invariably be the significant time lapse between a ruling in their favor and the ultimate close of litigation. . . . The prospect of reimbursement at the end of the litigation turnpike is of little consolation to a parent who cannot pay the toll at the outset.

96 F.3d at 85–87. The public policy of the IDEA supports the conclusion that, following an administrative decision in favor of the parents, the parents should not be forced to wait for the close of litigation to collect the award. *Borough of Palmyra*, 2 F. Supp. 2d at 645 ("[T]here is a strong public interest in enforcing the orders of administrative law judges and seeing that the Board complies with its duty under [IDEA] to provide a [FAPE] to its learning disabled students."). The Court therefore concludes that the public interest weighs against granting a stay.

## V. CONCLUSION

For the aforementioned reasons, the Board's motion to stay the decisions of ALJ McGill pending resolution of this appeal is denied. An appropriate Order accompanies this Opinion.

DATED: October 31st, 2018

HON. JOSE L. LINARES
Chief Judge, United States District Court

15