NORTHERN HIGHLANDS REGIONAL
HIGH SCHOOL BOARD OF EDUCATION,

    Plaintiff,

v.

C.E. and A.E. on behalf of C.E.,

    Defendants.

Civ. No. 2:18-cv-08999-CLW

**OPINION & ORDER**

NOT FOR PUBLICATION

## CATHY L. WALDOR, U.S.M.J.:

### I. Introduction

Plaintiff Northern Highlands Regional High School Board of Education ("Board") brings this action against Defendants Mr. C.E. and Mrs. A.E. o/b/o C.E. ("Defendants") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, as an appeal from the final administrative decisions of Administrative Law Judge Richard McGill ("ALJ McGill") issued on December 29, 2017, April 2, 2018, April 4, 2018, and April 26, 2018. Presently before the Court are Plaintiff's Motion for Summary Judgment ("Pl. Br.," ECF No. 52), and Defendants' Cross-Motion for Summary Judgment ("Def. Br.," ECF No. 53). For the reasons set forth below, the Court affirms ALJ McGill's December 29, 2017, April 2, 2018, April 4, 2018, and April 26, 2018 orders.

### II. Background

The following facts are taken from the Plaintiff's Complaint ("Compl.," ECF No. 1) and attached exhibits (ECF No. 1) as well as the administrative record below.

Plaintiff Northern Highlands Regional High School Board of Education oversees a regional high school in northern New Jersey. Defendants Mr. C.E. and Ms. A.E. are the parents of C.E., a student, who while in high school, was eligible for special education under the IDEA. ("Settlement Agreement," ECF No. 1, Ex. G). C.E.'s difficulties are social in nature. (ALJ McGill's December 29, 2017 Order ("Dec. 29 Order"), ECF No. 1-1, Ex. F, at 3). The Board was the local educational authority responsible for providing C.E. with a free and appropriate education ("FAPE"). (Settlement Agreement ¶ 1).

Because the Board did not offer a program appropriate for C.E. at Northern Highlands High School, C.E. attended Park Academy at Pascack Valley Regional High School, a special education day placement for his four years of high school. (Dec. 29 Order at 3). C.E. completed his academic requirements to graduate high school in June 2015, but C.E.'s parents felt an additional year of educational services was needed to meet the "social" goals of his Individualized Education Program ("IEP") and worked with C.E.'s case manager to find an appropriate transition program. (*Id.* at 3). The Board and C.E.'s parents ultimately agreed to a cost-sharing arrangement whereby C.E. would attend a residential transition program at the Riverview School in Massachusetts ("Riverview") for the 2015-16 school year. (Compl. ¶ 5). This arrangement was memorialized in a settlement agreement. ("Settlement Agreement").

The Settlement Agreement provided that the District would pay $45,998.00 for the 2015-16 school year at Riverview and that C.E.'s parents would pay the remaining tuition amount. (Settlement Agreement ¶ 2). The Settlement Agreement also included a paragraph ("Paragraph 6") that stated:

> An IEP meeting will be held in the spring 2016. Unless the parties mutually agree at the IEP meeting that C.E. requires educational services past June 30, 2016, [the Board's] legal responsibility to educate C.E. will terminate on June 30, 2016 at which time C.E. will

2

be awarded his high school diploma from Northern Highlands Regional School Board of Education. Should the parents and/or the student make any claims upon [the Board] for educational services after that date, C.E's "stay put" placement will, as of July 1, 2016 and until and unless there is a Court Order or mutually agreed-upon settlement establishing any other placement for C.E., be an in-district program in Northern Highlands.

(*Id.* ¶ 6). The Settlement Agreement was submitted and approved in an order by ALJ Robert Giordano on July 31, 2015. (ECF No. 1 at 15-21).

In the fall of 2015, C.E. began attending Riverview. (Dec. 29 Order at 4). On October 6, 2015, the Board issued an IEP for C.E.'s placement at Riverview school. (*Id.*). The IEP included language that "it was agreed upon by the parents and the District that C.E.'s placement at Riverview School will end on June 30, 2016." (Oct. 6, 2015 IEP (ECF No. 54-4 and 54-8)). The next agreed upon IEP meeting was set for March 8, 2016. (Dec. 29 Order at 5).

The March 8, 2016 IEP meeting was converted to a telephone conference. After the parties reviewed C.E.'s progress, it was clear that C.E. was not achieving his socialization goals. (*Id.* at 5). Another IEP meeting was scheduled for April 19, 2016. (*Id.* at 6). The meeting was rescheduled for May 26, 2016. (*Id.*).

According to the notice, the purpose of the meeting was to "review and revise the IEP and to plan for transition to adult life." (*Id.* at 7). At this meeting, C.E.'s Child Study Team told Defendants and their attorney that they did not agree that C.E. required any additional educational services from the Board and that its obligation to C.E. would terminate on June 30, 2016, despite Mr. and Mrs. E.'s concerns that C.E. did require additional services. (Compl. ¶ 8).

On June 2, 2016, Defendants filed a Due Process Petition arguing that 1) the Board breached the Settlement Agreement because the May 26, 2016 IEP meeting was not conducted in accordance with law, and 2) the Board denied C.E. a FAPE under the IDEA by denying him special

3

education services for the 2016-17 school year. (Compl. ¶ 9; ECF No. 1, Ex. B). As a result, Defendants requested that the Board pay for C.E.'s continued placement at Riverview or an alternative transitional placement. (ECF No. 1, Ex. B ¶ 16). Defendants also sent the Board a "10-day letter" on June 6, 2016, pursuant to N.J.A.C. § 6A:14-2.10 notifying the Board that Defendants rejected the Board's resolution of C.E.'s education and were forced to take whatever actions they deemed necessary, including unilateral placement of C.E. at Riverview for the following year, and that they may initiate litigation regarding the cost of that placement. (ALJ McGill April 2, 2018 Order ("Apr. 2 Order"), ECF No. 1-1, Ex. G at 3).

Defendants also filed a motion for emergent relief with the Office of Administrative Law on June 8, 2016. (Compl. ¶ 10; ECF No. 1, Ex. C). Defendants' motion for emergent relief requested that the Board not graduate C.E. and requested a ruling that Riverview remain C.E.'s stay-put placement at the Board's expense until the due process issues were resolved. (*Id.*). On June 20, 2016 Defendants withdrew their motion, and ALJ Ellen S. Bass ordered that the dispute proceed to a plenary hearing. (Apr. 2 Order at 4). In the meantime, C.E. attended Riverview for the 2016-17 school year — the full cost of which totaled $80,500.00 — at Defendants' expense. (ALJ McGill April 26, 2018 Order ("Apr. 26 Order"), ECF No. 1-1, Ex. I at 53).

The matter was assigned to ALJ McGill. The issues were: (1) whether the manner in which the May 26, 2016 IEP meeting was conducted constituted a breach of the Settlement Agreement; (2) whether the Board breached the Settlement Agreement by failing to establish an in-district stay-put program for C.E.; and (3) whether the Board denied C.E. a FAPE under the IDEA by refusing to pay for C.E.'s continued placement at Riverview. (*Id.* ¶¶ 13-14).

A hearing was held on May 3, 2017 to discuss the first issue. (Compl. ¶ 14). On December 29, 2017, ALJ McGill issued a decision finding that the Board had "complied with the

4

requirements for an IEP meeting with respect to notice, attendees, and substantive discussions[,] [and] [t]herefore, . . . fulfilled its responsibility to conduct an IEP meeting for C.E. in the spring of 2016." (Dec. 29 Order at 12).

ALJ McGill held another hearing on January 17, 2018 with respect to the issue of whether the Board breached the Settlement Agreement by failing to have an in-District stay put program in place for C.E., determining that it had. (Apr. 2 Order). The Board moved for reconsideration, and on April 4, 2018, ALJ McGill issued an order denying the motion. (ALJ McGill April 4, 2018 Order ("Apr. 4 Order"), ECF No. 1-1, Ex. H).

On April 9, 2018, ALJ McGill held one final hearing on the issue of whether there was a denial of FAPE for the 2016-17 school year. (Comp. ¶ 20-21). Finally, on April 26, 2018, ALJ McGill issued his last decision in this case holding that the Board failed to provide a FAPE for C.E. for the 2016-17 school year and that Defendants are to be reimbursed in the amount of $80,500 for the cost of C.E.'s placement at Riverview for the 2016-17 school year. (ALJ McGill April 26, 2018 Order, ("Apr. 26 Order"), ECF No. 101, Ex. I).

On May 9, 2018, the Board filed this action seeking an order reversing ALJ McGill's April 4 and 26, 2018 decisions. (Compl. at 10). On June 26, 2018, the Board filed a motion to stay those administrative decisions pending the resolution of this action. (ECF No. 3). On October 31, 2018, The Honorable Jose L. Linares denied the motion. (ECF No. 6). Plaintiff and Defendants both moved for summary judgment on July 18, 2019 and July 19, 2019, respectively. (ECF Nos. 52, 53). On August 12, 2019, the parties consented to this Court's jurisdiction. (ECF No. 58).

## III. **Standard of Review**

Any party aggrieved by a decision made under the IDEA by a state educational agency has a right to bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). This Court

5

has jurisdiction over those actions "without regard to the amount in controversy." 20 U.S.C. § 1415(i)(3)(A).

Within the IDEA context, the motion for summary judgment becomes "the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002) (quoting *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997)), *aff'd*, 65 F. App'x 404 (3d Cir. 2003). "[T]he summary judgment standard must be viewed in the context of what is effectively an appeal of an administrative decision." *V.M. ex rel. B.M. v. Sparta Twp. Bd. of Educ.*, 2014 WL 3020189, at *17 (D.N.J. July 3, 2014). The IDEA provides that when a federal district court reviews an administrative adjudication the court: (i) shall receive records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(C). "Thus, a court reviewing a state agency decision under the IDEA does not adopt a traditional summary judgment standard of review." *Keystone Central Sch. Dist. v. E.E. ex rel. H.E.*, 438 F.Supp.2d 519, 522 (M.D.Pa. 2006).

In IDEA cases, a district court is required to give "due weight" to the findings in state administrative proceedings. *See Bd. of Educ. of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 206 (1982). The Third Circuit has further defined "due weight" as "modified de novo" review. *S.H. v. State–Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003).

Under this standard, the ALJ's factual findings "are to be considered prima facie correct." *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citation and internal quotation marks omitted). Under this modified de novo review, "a district court is required to make findings of fact based on a preponderance of the evidence contained in the

complete record, while giving some deference to the fact findings of the administrative proceedings." *S.H.*, 336 F.3d at 270. As to credibility determinations, the district court must accept them, "unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." *Shore Reg'l High Sch.*, 381 F.3d at 199 (quoting *Carlisle Area Sch. v. Scott P. By & Through Bess P.*, 62 F.3d 520, 529 (3d Cir. 1995)). "[T]he word 'justify' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court." *Id.* (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)). For questions of law, a district court applies a de novo standard to the review of administrative decisions in IDEA cases. *See P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003) (*citing L.M. ex rel. H.M. v. Evesham Twp. Bd. of Educ.*, 256 F. Supp. 2d 290, 295 (D.N.J. 2003)).

## IV. Discussion

### A. The IDEA Statutory Scheme

The Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400-1482, ensures that all children with disabilities have access to a "free appropriate public education ("FAPE")," providing them with "an enforceable substantive right." *H.E. v. Walter D. Palmer Leadership Learning Partners Charter School*, 873 F3d 406, 408 (3rd Cir. 2017) (citing § 1412(a)(1); *Honig v. Doe*, 484 U.S. 305, 310, 108 S. Ct. 592 (1988)).

The IDEA imposes certain requirements on a school district. Among those requirements is the school must provide an "appropriate" education, that is, confer a meaningful education to a child with special needs. The core of that education is embodied in an Individualized Education Plan, commonly referred to as an IEP. An IEP must include, *inter alia,* (1) a statement of the child's present levels of academic achievement and functional performance, (2) a statement of measurable annual goals, including academic and functional goals, (3) a statement of the special

education and related services and supplementary aids and services to be provided to the child, (4) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and activities, and (5) the frequency, location and duration of the services. 20 U.S.C. § 1414(d)(1)(A); 34 C.F.R. § 300.320(a)(1); N.J.A.C. § 6A:14–3.7.

When a parent or majority-aged student objects to the adequacy of the education provided, the construction of the IEP, or some related matter, the IDEA provides procedural recourse. It requires that a state provide "[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [ a FAPE] to such child." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.,* 550 U.S. 516, 525, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007) (quoting 20 U.S.C. § 1415(b)(6)). This takes the form of an administrative proceeding centered around an "impartial due process" hearing pursuant to 20 U.S.C. § 1415(f)(1) and N.J.A.C. § 6A:14–2.7. *See D.C. v. Mount Olive Twp. Bd. of Educ.,* 2014 WL 1293534, at *2 (D.N.J. Mar. 31, 2014); *see also R.E. v. N.Y.C. Dep't of Educ.,* 694 F.3d 167, 175 (2d Cir.2012) (clarifying that a due process hearing is "a type of administrative challenge unrelated to the concept of constitutional due process"). After state proceedings are completed, "the IDEA permits an aggrieved party to bring a civil action in any court." *S.H. v. Lower Merion Sch. Dist.,* 729 F.3d 248, 257 (3d Cir. 2013) (citing 20 U.S.C. § 1415(i)(2)(A)). When a student is denied the rights and procedures provided in the IDEA, he or she is afforded the opportunity to file an administrative complaint to appeal an adverse determination to a federal district court. 20 U.S .C. §§ 1415(b)(6), (i)(2).

## B. Admission of Additional Evidence

Before the Court addresses the merits of this appeal, it must first resolve the dispute over whether the Board's submission of additional evidence will be admitted into the record for the Court's review.

On November 13, 2018, the Board wrote to this Court requesting limited discovery in this administrative appeal. (ECF No. 28). The requested documents concerned the C.E.'s attendance and academic records, correspondence between Defendants and the Board, and any record of Defendants' search for alternative placements for C.E. (*Id.* at 1). Defendants opposed this request, arguing that to do so would be improper because such evidence would be inadmissible under Third Circuit law regarding the admissibility of additional evidence in IDEA appeals. (ECF No. 29 at 1-2).

In reviewing an administrative order, the IDEA states that the district court "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C). The Third Circuit permits the introduction of additional information to supplement the administrative record, such as when there were "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 759 (3d Cir. 1995) (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), aff'd 471 U.S. 359 (1985)).

The *Susan N.* Court did not delineate a bright-line rule for admitting additional evidence, leaving the decision to the discretion of the district court. 70 F.3d at 760. A district court's discretion does not extend, however, to summarily exclude additional evidence provided by a party without analysis. *Id.* at 758. Instead, the court reviewing the administrative record must analyze

9

whether the proffered evidence is "relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved." *Id.* at 760. After admitting additional evidence, the district court is "free to accept or reject the agency findings depending on whether those findings are supported by the new expanded record and whether they are consistent with the requirements of the Act." *S.H.*, 336 F.3d at 270 (quoting *Oberti v. Bd. of Educ. of Clementon Sch. Dist.*, 995 F.2d 1204, 1220 (3d Cir.1993)).

This Court allowed the parties to engage in limited discovery, noting that the question of admissibility was premature and should be addressed after discovery was completed. (ECF No. 33). Now, the Board seeks to enter into the record new evidence. Attached to its Motion for Summary Judgment are the deposition transcript of Defendant Mr. E, C.E.'s father, taken on April 16, 2019, and the exhibits used at this deposition. Defendant opposes the inclusion of Mr. E.'s April 16, 2019 testimony and exhibits, arguing that 1) it is cumulative and embellishes testimony given at the first and third administrative hearings before ALJ McGill, at which Mr. E testified; and 2) the Board is attempting to use this new evidence to impeach Mr. E's credibility. (Defendants' Opposition to Pl.'s Motion for Summary Judgment, ECF No. 60 at 4).

Having reviewed and compared Mr. E's prior testimony at the administrative hearings to his April 16, 2019 deposition, the Court agrees with Defendant and declines to enter into the record the Board's new evidence. The Court finds that the questions asked of Mr. E. at his deposition were cumulative and intended to embellish the answers he gave at the administrative hearings. During his deposition, Mr. E responded largely to questions that were either already asked and answered during his prior testimony or could have been asked by the Board's attorney during the two opportunities at the administrative hearing.

Additionally, the Court also agrees with Defendants that the deposition is being used to impeach Mr. E's credibility. Indeed, the Board admits as much when it argues in its briefing that "the undisputed evidence demonstrates that Mr. E's testimony at OAL about who requested the stay put' language . . . was at best a 'mistake' and at worst perjured testimony given under oath by Mr. E. This was established during Mr. E's deposition and the exhibits shown to him during that deposition." (ECF No. 52-1 at 22). When evaluating administrative decisions on appeal, courts must accept the credibility determinations made by the administrative law judge "unless non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." *Shore Reg'l High Sch.*, 381 F.3d at 199. No non-testimonial, extrinsic evidence in the record compels this Court to question ALJ McGill's determinations about Mr. E's credibility while testifying at the OAL hearings. The Court therefore declines to allow the expansion of the administrative record and will exclude Mr. E's deposition and deposition exhibits in this appeal.

## C. Breach of the Settlement Agreement's Stay-Put Provision

The first issue raised by the parties' motions for summary judgment is ALJ McGill's finding that the Board's failure to have an in-district program available for C.E. constituted a breach of the Settlement Agreement. (Apr. 2 Order; Apr. 4 Order).

Written into the IDEA are procedural safeguards that "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig*, 484 U.S. at 311. The safeguards allow parents to file an administrative complaint challenging "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

Among those procedural safeguards is the "stay put" provision. 20 U.S.C. § 1415(j). The "stay put" provision under the IDEA provides:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed.

*Id. See also* N.J.A.C. § 6A:14-2.7(u). In other words, the district must maintain the last agreed upon program until the dispute is resolved. "Stay-put orders are designed to maintain the status quo during the course of proceedings,' essentially functioning as an automatic preliminary injunction." *W.R. Union Beach Bd. of Educ.*, 2009 WL 402715, *4 (D.N.J. Nov. 19, 2009).

### 1. *ALJ McGill's Findings*

ALJ McGill concluded in his April 2 order that there had been a breach of the Settlement Agreement with respect to the last sentence of Paragraph 6. (Apr. 2 Order at 7). In his order, ALJ McGill began by introducing the principles of contract interpretation and noting that settlement agreements are contracts between parties. (*Id.*). In accordance with contract interpretation principles, ALJ McGill first considered the plain language of the agreement and found that the "operable language is clear:" if Defendants made any claims for service beyond June 30, 2016 that there would be, as of July 1, 2016, an in-district program at Northern Highlands. (*Id.* at 6).

ALJ McGill further noted that the Board's purported intention for including the last sentence of Paragraph 6 – that it would relieve the Board from the responsibility of having to pay for C.E.'s continued placement at Riverview – is "not apparent from the language or the context." (*Id.*). In support of this conclusion, ALJ McGill cited to the following findings of fact, all of which "clearly" indicated that the parties "took seriously" the possibility of an in district program:

(1) in March 2016, when asked by Mr. E whether there was anything in place in accordance with the stay put provision in the event C.E. did not return to Riverview,

Mr. Thomas Buono, Supervisor of Special Services at Northern Highlands School District, replied that the Board would create a program if necessary;

(2) at the IEP meeting on May 26, 2016, Mr. Buono again said the Board would create a stay-put program if necessary;

(3) Defendants' attorney, through a May 27, 2016 letter, requested an opportunity for Defendants to visit the the "stay put" transition program at Northern Highlands;

(4) a June 2, 2016 letter gave the Board's attorney formal written notice of a unilateral placement for C.E., putting the Board on a ten-day notice to develop an IEP to provide a FAPE for C.E.

(*Id.*). ALJ McGill concluded that these circumstances "warranted" a finding that the last sentence of Paragraph 6 created an obligation for the Board to provide an in-district program for C.E., an obligation they did not fulfill. (*Id.* at 7).

After a motion for reconsideration by the Board's attorney on April 3, 2018, ALJ McGill issued another order. This order, published on April 4, 2018, reiterated the findings of the April 2, 2018 order once again citing to contract interpretation principles. ALJ McGill notably added an additional reason: within the IDEA context, an interpretation of a settlement agreement that eliminates a stay-put program is inappropriate given the explicit language of the IDEA that provides for it. (Apr. 4 Order at 2-3).

### 2. *The Board's Arguments on Appeal*

The Board, in support of its request of this Court to overturn ALJ McGill's April 2, and 4, 2018 decisions, first argues that the last sentence of Paragraph 6 was included "not because either party anticipated that [D]efendants would even consider returning C.E. to an in-district placement" but rather so that the Board "would not have to continue to pay for C.E.'s Riverview placement in the event of a legal challenge by Defendants." (Pl. Br. at 18). In other words, "[t]he parties mutually agreed to the 'stay put' language . . . to preclude [Defendants] from invoking stay put in the event of a dispute, in which the parents sought additional services in Northern

Highlands." (*Id.* at 27). The Board claims this intent is not only clear from the language itself, but from the parties' actions in June 2016 and thereafter. (*Id.* at 19).

The Board cites to the following example as evidence of this intent. From the date Defendants withdrew their Emergent Relief request in June 2016 to the date of ALJ McGill's last ruling in April 2018, the Board alleges that Defendants did not assert that the Board was obligated, by operation of stay put, to pay for C.E.'s tuition at Riverview for 2016-17. (*Id.*). The Board reasons that Defendants never asserted this because they "accepted and acknowledged that [P]aragraph 6 . . . precluded such an argument." (*Id.*).

The Board further maintains that had Defendants any interest in returning C.E. to Northern Highlands they would not have filed a Due Process Petition and written notice of unilateral placement, nor would they have left out any mention of an in-district program in the pleadings filed for the Motion for Emergent Relief. (*Id.* at 19-20). Indeed, the Board claims, once Defendants were informed that there was no space available for C.E. in Riverview's extended school year program, they withdrew their emergent relief application with respect to that request. (*Id.* at 20). This all suggests, the Board argues, that Defendants' claim that they were "interested" in returning C.E. to Northern Highlands after July 1, 2016, is "utterly without merit." (*Id.* at 21).

### 3. *ALJ McGill's April 2 and 4, 2018 Orders are Affirmed*

When the parties entered the settlement agreement at issue in this case, they entered into a contract. *See D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3rd Cir. 1997) (citing *In re Columbia Gas System, Inc.*, 50 F.3d 233, 238 (3d Cir. 1995) ("In a nonbankruptcy context, we have treated a settlement agreement as a contract.")). A settlement agreement voluntarily and willingly entered into by parties is a binding contract and enforceable. *D.R. by*

*M.R.*, 109 F.3d at 900-901. Accordingly, this Court will analyze the agreement, as ALJ McGill had, as a contract entered into by both parties.

Central to ordinary rules of contract interpretation is the principle that courts "enforce contracts in accordance with their terms." The court's role when interpreting a contract is not to "supply terms to contracts that are plain and unambiguous," nor is it to "make a better contract for either of the parties than the one which the parties themselves created." *Maglies v. Estate of Guy*, 193 N.J. 108, 143 (2007) (citing *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43 (1960) ("Courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made."); *Graziano v. Grant*, 326 N.J. Super. 328, 342 (App. Div. 1999) ("[I]t is not the function of the court to make a better contract for the parties, or to supply terms that have not been agreed upon.")).

It is well-settled that a "written contract is formed when there is a 'meeting of the minds' between the parties evidenced by a written offer and an unconditional, written acceptance." *Morton v. 4 Orchard Land Trust*, 180 N.J. 118, 129-30 (2004). "The phrase 'meeting of the minds' can properly mean only the agreement reached by the parties as expressed, i.e., their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former." *Leitner v. Braen*, 51 N.J. Super. 31, 38 (App. Div. 1958). An unexpressed intent not to be bound is immaterial. *Brawer v. Brawer*, 329 N.J. Super. 273, 283 (App. Div. 2000). "So far as the evidence tends to show, not the sense of the writing, but an intention wholly unexpressed, it is irrelevant. . . . The actual intent of the parties is ineffective unless made known in some way in the writing." *Newark Publishers' Ass'n v. Newark Typographical Union, No. 103*, 22 N.J. 419, 427 (1956). Objective manifestations of intent are sufficient and controlling. *Brawer*, 329 N.J. Super at 283.

Given these principles as well as the standard of review required in IDEA appeals, the Court affirms ALJ McGill's April 2 and 4, 2018 rulings. The final sentence of Paragraph 6 of the Settlement Agreement establishes a stay-put placement for C.E. in the event the parties disagreed about the appropriate educational course for him after June 30, 2016. Pursuant to that provision, the Board had an obligation to establish its own in-district placement in the event that Defendants filed for a due process hearing claiming a need for educational services after June 30, 2016, which Defendants did on June 2, 2016. Regardless of whether the Board believed Defendants only wanted to send C.E. back to Riverview and intended only on cutting off that financial responsibility, the clear language of Paragraph 6 envisions a stay put placement in an in-district program. ALJ McGill correctly applied contract principles and made findings of fact about events that occurred in the spring of 2016 that further suggest a manifested intent to provide an in-district program for C.E. if he did not return to Riverview, findings that this Court believes are correct.

The Court is unpersuaded by the Board's arguments about Defendants' intentions or preference for Riverview. As noted by Defendants in their briefing, "the fact that a parent is initially reluctant to accept special education at a public school neither alters nor extinguishes the school district's obligation to make an offer of such education." (Def. Br. at 14) (citing *Dallas Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 316 (5th Cir. 2017)). Moreover, the findings by ALJ McGill that Defendants had repeatedly asked the Board's representatives about an in-district program dispels the Board's contention that Defendants never seriously desired an in-district program and agreed to the last sentence of Paragraph 6 only as a cosmetic one.

In sum, giving "due weight" to the ALJ McGill's findings of fact, the Court finds that the administrative record when applied to contract law supports his conclusion that the Board breached the settlement agreement when it failed to provide an in-district program as required by the stay-

16

put provision. As ALJ McGill stated, whatever Plaintiff's representatives "hoped, expected or believed . . . are immaterial to the proper interpretation of a contract." (*Id.* 2-3). Thus, the Court affirms.

## D. Denial of FAPE and Relief

### 1. *ALJ McGill's April 26, 2018 Findings*

In an order dated April 26, 2018, ALJ McGill held that under N.J.A.C. § 6A:14-2.10, Defendants had a right to reimbursement for C.E.'s placement at Riverview for the 2016-17 school year for its denial of FAPE. (Apr. 26 Order at 9). ALJ McGill reasoned that the May 26, 2016 IEP meeting did not result in an IEP for the 2016-17 school year, rather it was just a meeting to update the parties on the IEP for the 2015-16 school year. Without an IEP for the 2016-17 school year, ALJ concluded, C.E. could not have received a FAPE. Consequently, ALJ McGill found that C.E.'s placement at Riverview could be understood as a unilateral placement on the part of C.E.'s parents and thus reimbursement could be rightfully sought. Alternatively, because the in-district program contemplated by the stay put provision did not exist at the time Defendants attempted to invoke it, Riverview became C.E.'s last operative placement. Under either result, Defendants were entitled to relief. (*Id.* at 7).

### 2. *The Board's Arguments on Appeal*

The Board objects to ALJ McGill's ruling that it failed to offer a FAPE for the 2016-17 school year, because C.E. was not entitled to an additional year of educational services. The Board argues at length in its papers about the testimony presented at the OAL hearings and the appropriateness of continued education for C.E. after the 2015-16 school year. (Pl. Br. at 30-34). As for the relief ordered, the Board also asserts that because it only had to pay about half of the

Riverview cost for the 2015-16 school year, that it should not have to pay the full amount for the 2016-17 school year.

### 3. *The Court Affirms ALJ McGill's April 26, 2018 Order*

The Court concludes that the record provides considerable support for ALJ McGill's determination that the Board failed to provide C.E. with a FAPE for the 2016-17 school year. The Board has not persuaded the Court by a preponderance of the evidence why it should find otherwise. One of the components of a FAPE is "special education," defined as "specially designed instruction . . . to meet the unique needs of a child with a disability." 20 U.S.C. §§ 1401(9), (29). It is through the IEP that "[t]he 'free appropriate public education' required by the IDEA is tailored to meet those "unique needs" of a particular child. *Endrew F. ex rel. Joseph F. v. Douglas County School Dist. RE-1*, 137 S. Ct. 988, 994 (2017). ALJ McGill found that the meeting on May 26, 2016 only provided for the continued placement of C.E. at Riverview for the period from May 27, 2016 to June 30, 2016. It did not offer or produce any IEP for the period beyond June 30, 2016, thus leaving no IEP for the 2016-17 school year. Regardless of whether C.E. was entitled to more education for the 2016-17 school year, such a question should have been resolved through the process of developing an IEP. The Court agrees with ALJ McGill that without one C.E. was denied a FAPE.

As for the relief ordered, because the Board did not provide an in-district program for C.E. upon the triggering of the stay put provision, the last operative placement was Riverview based on the October 6, 2015 IEP. Additionally, when a state fails to satisfy the statutory mandate to provide a FAPE, the parents have the right to reimbursement of a unilateral placement in a private school. *Burlington v. Department of Educ. of Commonwealth of Mass.*, 471 U.S. 359, 370 (1985); *T.R. v. Kingwood Township Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000).

For parents to be reimbursed for a unilateral placement in a private school, the implementing New Jersey regulation, N.J.A.C. § 6A:14-2.10, requires the following: 1) the school district did not make a FAPE available to the student in a timely manner prior to the parents' unilateral placement; 2) the private placement was appropriate; and 3) the parents provided notice to the district board of education of their concerns and their intent to enroll their child in a nonpublic school at public expense. N.J.A.C. § 6A:14-2.10(b)-(c). ALJ McGill determined that 1) the Board failed to provide a FAPE for C.E. for the 2016-17 school year, 2) that Riverview was an appropriate placement for C.E. to transition, and 3) that Defendants' attorney gave the required notice of a unilateral placement by letter dated June 2, 2016. (Apr. 26 Order at 8). The Court affirms these findings that Defendants satisfied all of the requirements for reimbursement. Regardless of whether C.E. needed additional educational services after June 30, 2016, once Defendants filed their due process petition on June 3, 2016, the stay-put provision took effect and without an in-district program in place, Riverview became the next appropriate placement.

As to the Board's arguments about how much it should have to reimburse Defendants, the Court once again affirms ALJ McGill. Stay-put violations are to be taken seriously. Courts should not "allow school districts [to] ignore their obligations under the IDEA's 'stay put' provision . . . with impunity." *M.R. v. Ridley School District*, 868 F.3d 218, 227 (3d Cir. 2017). The Court agrees with Defendant that when the Board failed to provide an in-district program for C.E., it "forced [Defendants] to obtain a placement at their own expense." (Def. Br. at 17). The IDEA empowers courts to grant the relief that they determine to be appropriate. *Burlington,* 471 U.S. at 370. ALJ McGill was not unreasonable in ordering a full reimbursement as an appropriate remedy and will therefore not contradict him. ALJ McGill's ordered remedy of full reimbursement of costs in placing C.E. at Riverview for the 2016-17 school year is affirmed.

**E. Breach of Settlement Agreement's IEP Provision**

Among the other procedural safeguards under the IDEA are those to be followed in the creation of an IEP. An IEP is to be prepared at a meeting with specific participants – a qualified representative of the local educational agency, a general education teacher, a special education teacher, the child's parent or guardian, and, where appropriate, the child. 20 U.S.C. § 1414(d)(1)(B). The attendance of these individuals may be waived by agreement between the parent and the local educational agency or by prior written input from the absent party. The local educational agency must provide parents with "written prior notice" of any evaluation procedures such agency proposes to conduct," or when the agency proposes or refuses to initiate a change in the "identification, evaluation, or educational placement of the child." *Id.* §§ 1414(b)(1)-(b)(3). Defendants dispute that these procedures were followed at the May 26, 2016 meeting and ask the Court now to reverse ALJ McGill's decision that that meeting sufficiently qualified as an IEP meeting as called for by the Settlement Agreement.

### *1. ALJ McGill's December 29, 2017 Order*

In resolving the question of whether the meeting on May 26, 2016 amounted to an IEP meeting as required by the first sentence of Paragraph 6 in the Settlement Agreement, ALJ McGill made the following findings about the meeting:

1) On May 26, 2016, the parties conducted an IEP meeting to discuss C.E.

2) The participants were Defendants, Cathy Berberian, C.E.'s case manager, Mr. Buono (also a special education teacher), Riverview advisor Ann Phelan, Defendants' attorney Christine Soto, and the Board's attorney James Plosia. (Dec. 29 Order at 7).

3) No general education teacher was present at the meeting because C.E. was not enrolled in general education classes at Riverview. No one objected to the absence or presence of persons at the meeting.

4) As to the subject matter of the meeting, there was "no specific point-by-point review of an IEP, no revisions were made to an IEP, there was no planning for transition to

adult life, and no one offered Mr. E a summary of C.E.'s performance. . . . [A] representative of Riverview gave a five-to-ten report about C.E.'s progress. . . ." (*Id.* at 8).

5) There was no written summary of performance for C.E. prepared by his case manager, Ms. Berberian. (*Id.* at 9).

6) There were no restrictions on Defendants' ability to present their own views on C.E.'s situation or on Riverview's ability to provide input. (*Id.* at 10).

Based on these findings, ALJ McGill concluded that the Board fulfilled its responsibility for purposes of the Settlement Agreement to conduct an IEP meeting for C.E. in the spring of 2016. (*Id.* at 12).

First, relying on the language of N.J.A.C. § 6A:14-2.3(k)2ii, which states that among the participants must be "not less than one general education teacher of the student, if the student is or may be participating in the general education classroom," ALJ McGill found that C.E. was not in any general education classes at Riverview. ALJ McGill further found that Supervisor Buono constituted a special education teacher. Thus, the requirement for specific participants was fulfilled. (*Id.* at 10).

Second, ALJ McGill reasoned that both Defendants and the Board were "fully apprised" of C.E.'s progress because the telephone meeting on March 8, 2016 was "devoted to [the] review of C.E.'s progress at Riverview." (*Id.* at 10). Additionally, a representative of Riverview provided an update on C.E.'s progress at the May 26, 2016 meeting. "It follows," ALJ McGill wrote, "that [the Board's] representatives had the information they needed to make a determination in regard to C.E.'s education." (*Id.*).

Third, because an IEP meeting in the spring of 2016 was provided for in the first sentence of Paragraph 6 of the Settlement Agreement, ALJ McGill, citing contract principles, interpreted the provision in conjunction with the rest of the paragraph, which provided in part that "[u]nless

21

the parties mutually agree at the IEP meeting that C.E. requires educational services past June 30, 2016, the District's responsibility to educate C.E. will terminate on June 30, 2016. . . ." ALJ McGill concluded that this second sentence qualified the first in limiting the subject matter of the May IEP meeting. ALJ McGill stated that "[Defendants'] expectation that the IEP meeting on May 26, 2016 would be like any other [given the above quoted provision] was unreasonable." (*Id.* at 11). Moreover, because C.E.'s lack of progress discussed in the March 8, 2016 phone call had not improved by the time of the May 26, 2016, there was "no change of circumstances" with respect to C.E. that needed to be discussed at the May meeting. (*Id.* at 11-12).

Finally, ALJ McGill held that there was no violation on the Board's part with respect to the lack of written summary of performance because there is no requirement under N.J.A.C. §6A:14-4.11(b)4 – a provision that requires a school district to provide a written summary of the student's academic achievement and functional performance prior to the date of the student's graduation or conclusion of the school year in which the student exceeds age of eligibility – to prepare that written summary at or before the IEP meeting. (*Id.* at 12).

## 2. *Defendants' Arguments on Appeal*

Defendants now ask this Court to reverse ALJ McGill's determination that the Board did not fail to hold an IEP meeting in the spring of 2016 as required by the Settlement Agreement. Defendants argue the Board violated the IDEA's and New Jersey implementing regulations' procedural requirements for an IEP meeting in the following notable ways: the specific participants required at IEP meetings; providing a written summary of performance for students when they are about to graduate or exceed age of eligibility; and the alleged refusal of the Board to have any substantive discussions with the parents at the May 26, 2016 hearing, which consequently denied Defendants' an opportunity for meaningful participation.

22

First, Defendants point out the requirement under 20 U.S.C. § 1414(d)(1)(B) and N.J.A.C. § 6A:14-2.3(k)(2) that specific participants must be in attendance at an IEP meeting, except when excused upon consent by the parents and the district. Despite Ms. Berberian's, C.E.'s case manager, having "some awareness" of the parental consent requirement for excusal, Defendants argue that not only was consent not requested by the Board, but no general or special education teacher participated in the May 26, 2016 meeting. (Def. Br. at 21). Defendants dispute ALJ McGill's finding that no general education teacher was required because C.E. was not taking any classes. Instead, Defendants contend that C.E. was attending general education classes while at Riverview in the form of an English class at the Cape Cod Community College. (Def. Br. at 21). Defendants point not only to Mr. E's testimony at the OAL hearing, but also to the IEP reports from the various IEP meetings, which made note of C.E.'s enrollment in the community college class. (*Id.*)

Next, regarding the notice requirement and the substance of the meeting, the district's notice for the May 26, 2016 meeting stated that the purpose for the meeting was a "review/revision of the IEP; planning for transition to adult life." Defendants object to ALJ McGill's holding that because Defendants were aware of C.E.'s progress, or lack thereof, from prior meetings and because Riverview's representative gave a five to ten minute updated report at the May meeting that there was sufficient information for the parties to determine that C.E. did not require any additional services. (Def. Br. at 29). Defendants assert that the Board's conduct at the May 26, 2016 meeting demonstrated that it had "predetermined the outcome of that meeting" and therefore, "impaired the parents' right to participate in the IEP process in violation of the IDEA." (Def. Br. at 31) (citing *D.B. and L.B. o/b/o H.B. v. Glouscester Twp. School District*, 751 F. Supp. 2d 764 (D.N.J. 2010), *affirmed* 489 F. App'x 564, 566 (3d Cir. 2012)).

### 3. *ALJ McGill's December 29, 2017 Decision is Affirmed*

The Court affirms ALJ McGill's December 29, 2017 finding that the May 26, 2016 meeting satisfied the Settlement Agreement's requirement for an IEP meeting in the spring of 2016.

In October 2015, the parties first met to develop an IEP for the 2015-16 school year. A follow up IEP meeting was scheduled in March. The last was on May 26, 2016. The parties had both the March meeting and the May meeting to be updated on and discuss C.E.'s progress with respect to his IEP goals. Indeed, at the May meeting, ALJ McGill found that the representative from Riverview gave a five to ten minute presentation on C.E. The Court defers to and agrees with ALJ McGill that between this presentation and the March telephone call, the parties had enough information to make a determination about C.E.'s education.

Moreover, ALJ McGill correctly construed the first sentence of Paragraph in conjunction with the second. This was not a meeting to develop an IEP for the 2016-17 school year. Instead, it was a meeting requested by Defendants so that an update could be provided to parties on C.E.'s progress and ultimately resolve whether an extension was necessary.

Finally, ALJ McGill correctly resolved Defendants' objection to the lack of a written summary of performance under N.J.A.C. § 6A:14-4.11(b)(4). The provision does not require that a summary of performance for students about to graduate be prepared at or before an IEP meeting, thus the lack of one at the May meeting does not violate that provision.

While the Court finds some tension between Defendants' evidence of C.E.'s attendance in general education classes and ALJ McGill's finding to the contrary, the Court is unpersuaded that the possible procedural violation of an absent general education teacher alone led to a loss in educational opportunity for C.E. or denied Defendants a meaningful participation in C.E.'s IEP

process. Defendants, citing to the U.S. Supreme Court, argue that the procedural requirements of the IDEA "are there for a reason." (Def. Br. at 30) (citing *Endrew F.*, 137 S. Ct. at 1000). "[T]heir focus provides insight into what it means . . . to 'meet the unique needs' of a child with a disability." However, "a procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010) (citing 20 U.S.C. § 1415(f)(3)(E)); *see also* N.J.A.C. § 6A:14-2.7; *G.N. ex rel. J.N. v. Bd. of Educ.*, 309 Fed. Appx. 542, 545-46 (3d Cir. 2009). "[T]hough it is important that a school district comply with the IDEA's procedural requirements, rather than being a goal in itself, such compliance primarily is significant because of the requirements' impact on students' and parents' substantive rights." *Id.*

The import of complying with the procedural requirements of the IDEA is not lost on this Court. However, Defendants have failed to show beyond a conclusory statement in their brief how the lack in a general education teacher at the May 26, 2016 meeting resulted in the loss of an educational opportunity for C.E. Conclusory statements are not enough to meet the threshold of a preponderance of the evidence. Nor have Defendants met that threshold when they argue that a predetermination by the Board and its representatives of the outcome of the May meeting denied Defendants meaningful participation in their child's education. Like in *E.P. v. North Arlington Board of Education*, 2019 WL 1495692, at *7 (D.N.J. Apr. 1, 2019), where the parents had back and forth discussions with the school district's staff demonstrating that the parents were not seriously deprived of their parental participation rights, here, Mr. E. met with the Board's representatives on a number of occasions. ALJ McGill found that there was not only the telephone conference held on March 6, 2018, Mr. E spoke with Mr. Buono over the telephone on March 24,

2016 as well as met with the school's superintendent on April 19, 2016 regarding his concerns about C.E.'s little progress in socialization. (Dec. 29 Order at 6). "A school district is not liable for failing to accept parents' recommendations. *G.A. ex rel. L.A. v. River Vale Bd. of Educ.*, 2013 WL 5305230, at \*21 (D.N.J. Sept. 18, 2013); *see also L.G. v. Fair Lawn Bd. of Educ.*, 2011 WL 2559547, at \*5 (D.N.J. June 27, 2011) ("If the standard for measuring meaningful parental participation was that the parents always prevailed, there would be no process at all."). "The district need only listen to [parental] concerns." *Id.* Even though the Board ultimately rejected Defendants' concerns that C.E. had not progressed enough to terminate his education, the Court finds that Defendants did meaningfully participate in these discussions.

The Court agrees with the Board that not only did ALJ McGill correctly decide that the meeting on May 26, 2016 satisfied the requirements of Paragraph 6, Defendants have failed to establish with a preponderance of the evidence how the possible procedural violations at the May meeting resulted in the loss of an educational opportunity for C.E. or denied the parents a meaningful participation in the IEP process such that the Court should reach the question of liability.

## V. Conclusion

For the above stated reasons, the Court finds that the administrative record supports the findings and conclusions of ALJ McGill's December 29, 2017, April 2, 2018, April 4, 2018, and April 26, 2018 decisions. Thus, this Court affirms in full, denies the Board's motion and grants Defendants' motion with respect to the April 2, 4, and 26, 2018 orders, and grants the Board's motion and denies Defendants' motion with respect to the December 29, 2017 order.

Accordingly, it is on this 4th day of November, 2019,

26

**ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 52) is **GRANTED** in part and **DENIED** in part.

**ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 53) is **GRANTED** in part and **DENIED** in part.

**ORDERED** that the Clerk shall terminate ECF Nos. 52 and 53.

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**

11/12/19